IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLIFFORD SKINNER** <br><br> v. <br><br> **ANNA HADLOCK** | **CIVIL ACTION NO. 2:22-cv-3087-MMB** |
| **ANNA HADLOCK** <br><br> v. <br><br> **MINCEY FITZPATRICK ROSS LLC & CLIFFORD SKINNER** | **CIVIL ACTION NO. 2:23-cv-1870-MMB** |

<u>**MEMORANDUM RE: MOTION TO QUASH**</u>

**Baylson, J.**                                                                                                  **October 31, 2023**

Pending before this Court is Defendant Hadlock's Motion to Quash Plaintiff's Subpoenas to Deer Creek Psychological Associates ("Deer Creek") and Dartmouth-Hitchcock. ECF No. 53. For the following reasons, the Motion will be granted.

I.   **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Skinner filed an action against Defendant Hadlock alleging abuse of process, intentional infliction of emotional distress and malicious prosecution.[1] ECF No. 28 (Second Amended Complaint). Hadlock separately filed an action against Skinner and his lawyers, alleging defamation and false light, arguing that Defendants' publication "has caused Plaintiff [Hadlock] irreparable harm to her reputation and business as well as mental suffering, shame, humiliation, physical and emotional distress." ECF No. 1, ¶ 11 (23-cv-1870). In its Order dated July 27, 2023, this Court consolidated these two actions for discovery purposes. ECF No. 50.

---

[1] This Court granted Defendant Hadlock's Motion to Dismiss the Amended Complaint as to the false arrest and false imprisonment claims and denied the motion as to the abuse of process, intentional infliction of emotional distress and malicious prosecution claims. ECF No. 15.

1

Plaintiff Skinner alleges that Defendant Hadlock falsely accused him of raping her in September 2018 while Defendant Hadlock was a student enrolled in the University of Pennsylvania's Masters of Social Work program.  Plaintiff Skinner, who was a program counselor at a housing-for-the-homeless social work program and Hadlock's graduate assignment supervisor at the time, was arrested in January 2019 and incarcerated for nearly two years while awaiting trial.  In December 2021, Skinner's criminal trial commenced; at the end of Hadlock's testimony and before the end of the prosecutor's case, the prosecutor moved to withdraw the case with prejudice due to new evidence produced at trial. The trial judge granted the motion and Skinner's criminal case was terminated.  Plaintiff Skinner then brought the above claims against Hadlock.

On September 8, 2023, Plaintiff Skinner subpoenaed Deer Creek and Dartmouth-Hitchcock, seeking "[a]ny and all medical records related to treatment rendered to Anna Hadlock."  See ECF No. 53, Ex. C (Def.'s Objections to Pl.'s Subpoenas), attached as Ex. A, B. Defendant Hadlock filed a Motion to Quash Plaintiff's Subpoenas to Deer Creek Psychological Associates and Dartmouth-Hitchcock.  ECF No. 53.  Plaintiff Skinner filed a Response in Opposition. ECF No. 55.

On September 29, 2023, during a telephone conference with counsel and this Court, Defendant Hadlock's counsel raised for the first time the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7101 et seq.  Defendant Hadlock's counsel suggested that this statute barred disclosure of Defendant Hadlock's medical records.  This Court ordered Defendant Hadlock's counsel to secure and submit to this Court the medical records subpoenaed by Plaintiff Skinner for in camera review.  ECF No. 56.  This Court further ordered Defendant Hadlock to submit a brief regarding the applicability of the MHPA by October 6, 2023, and Plaintiff Skinner

to file a response brief by October 13, 2023. Id. Defendant Hadlock filed a Memorandum in Support of her Motion to Quash on October 6, 2023 ("Defendant MHPA brief"). ECF No. 58. Plaintiff Skinner filed a response in opposition on the same day ("Plaintiff MHPA brief"). ECF No. 59.

## II. PARTIES' CONTENTIONS

Defendant Hadlock argues that this Court should quash Plaintiffs' subpoenas directed to Deer Creek and Dartmouth-Hitchcock because they are "harassing, not reasonably calculated to lead to the discovery of admissible evidence and impose undue and unnecessary burden onto these third-parties." ECF No. 53 at 3. Defendant Hadlock also states that these subpoenas were sent over Defendant Hadlock's objections. Id. In his Opposition, Plaintiff Skinner argues that he properly subpoenaed Defendant Hadlock's medical and psychological records based on Defendant alleging that Plaintiff Skinner caused her mental suffering and emotional distress, thereby putting her mental condition "into issue" in the case. ECF No. 55 at 10. Plaintiff Skinner asserts that the medical records sought are directly relevant to the present litigation and may provide evidence of potential sources of Defendant Hadlock's alleged mental and physical injuries which Defendant Hadlock in her action attributes to Plaintiff Skinner's conduct. ECF No. 55 at 6.

Following a telephone conference with counsel and this Court, discussed above, Defendant Hadlock filed a brief regarding the applicability of the MHPA and in support of her Motion to Quash the Subpoenas to Deer Creek Psychological Associates and Dartmouth-Hitchcock. In her MHPA brief, Defendant Hadlock argues that she alleges defamation and false light, and one line in her complaint mentioning shame and distress is insufficient to constitute an implicit waiver of her privilege under the MHPA. In his MHPA brief, Plaintiff Skinner argues

3

that he has properly subpoenaed Defendant Hadlock's medical and psychological records based on Defendant Hadlock alleging that Plaintiff Skinner caused her duress, mental suffering, and emotional distress, effectively waiving confidentiality protections afforded by the MHPA.

### III. DISCUSSION

In the Third Circuit, "[i]t is well recognized that the federal rules allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999) (citing In re Madden, 151 F.3d 125, 128 (3d Cir. 1998)). One discovery tool available to parties is the subpoena. The Federal Rules permit a court to quash a subpoena under certain circumstances: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that …requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). The party moving to quash bears the burden of establishing that a privilege applies to the subpoenaed documents. Kida v. EcoWater Systems LLC, 2011 WL 1883194 at *2 (E.D.Pa. May 17, 2011) (Baylson, J.).

#### a. Whether the MHPA Applies to Defendant Hadlock's Records

The crux of this dispute is whether Defendant Hadlock's medical records are protected by the MHPA. The goal of the MHPA is "to establish procedures which implement Pennsylvania's policy of seeking to assure the availability of adequate treatment to persons who are mentally ill." Greater New York Mut. Ins. Co. v. Bell Socialization Servs., Inc., 2009 WL 1743747 at *2 (M.D.Pa. June 18, 2009). Section 7111 of the MHPA "mandates that all documentation concerning persons in treatment be kept confidential, in the absence of patient consent, except in four limited circumstances." Zane v. Friends Hosp., 575 Pa. 236, 836 A.2d 25, 31 (2003). More specifically, Section 7111 provides:

>   (a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>     (1) those engaged in providing treatment for the person;
>     (2) the county administrator, pursuant to section 110;
>     (3) a court in the course of legal proceedings authorized by this act;[2] and
>     (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

50 P.S. § 7111(a). Section 7111 "applies to *all* documents regarding one's treatment, not just medical records." Zane, 575 Pa. at 836. However, the MHPA is limited in its applicability. It only "establishes rights and procedures for **all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons**." 50 P.S. § 7103.[3] Courts have held that voluntary outpatient mental health treatment records, for example, do not fall within the protection of the MHPA. See Gormley v. Edgar, 995 A.2d 1197, 1203 (Pa. Super. 2010); see also Tavella-Zirilli v. Ratner Co., L.C., 266 A.3d 696, 701 (Pa. Super. 2021).

Here, while Defendant Hadlock references the MHPA throughout her brief, she does not present any arguments as to its applicability to the facts of this case. More specifically, Defendant Hadlock does not point to anything in the record as evidence that her medical records relate to (1) involuntary treatment or (2) voluntary inpatient treatment such that they warrant protection under the MHPA. Defendant Hadlock does not state whether she was an involuntary or voluntary patient. She also does not state whether she received inpatient or outpatient care

---

[2] Courts have found that "[t]he unambiguous language of section 7111(3) leads us to conclude that a patient's inpatient mental health treatment records may be used by a court only when the legal proceedings being conducted are within the framework of the MHPA, that is, involuntary and voluntary mental health commitment proceedings." Commonwealth v. Segarra, 228 A.3d 943, 952-53 (Pa. Sup. 2020). The exception for legal proceedings is thus not applicable in the present case.

[3] Section 7103.1 defines "inpatient treatment" as "[a]ll treatment that requires full or part-time residence in a facility," and defines "facility" as, inter alia, "[a] mental health establishment, hospital, clinic, institution, center." 50 P.S. § 7103.1.

from the two subpoenaed entities. This Court reviewed Defendant Hadlock's records in camera for the purpose of ascertaining whether Defendant Hadlock's records are protected by the MHPA.[4] Based on this review, this Court determines that Defendant Hadlock received inpatient treatment at Dartmouth-Hitchcock, and as such, her records are covered by the MHPA. The records also reveal that Defendant Hadlock did not receive any patient care at Deer Creek, and as such, there are no discoverable records from Deer Creek at-issue here.

### b. Whether Defendant Hadlock Implicitly Waived MHPA Protection

Having concluded that the MHPA applies to the medical records, this Court now examines whether Defendant Hadlock implicitly waived the protections afforded by the MHPA. "As a general matter, once it is established that records are privileged from disclosure to third parties, the burden shifts to the party seeking disclosure to establish that an exception to the privilege exists which would allow the disclosure." Commonwealth v. Segarra, 228 A.3d 943, 955 (Pa. Super. 2010) (quoting In re Fortieth Statewide Investigating Grand Jury, 656 Pa. 252, 220 A.3d 558, 568 (2019)). Plaintiff Skinner argues that, notwithstanding the fact that the MHPA applies, Defendant Hadlock has put her mental state "at issue" in this case by alleging that Plaintiff Skinner caused her mental suffering and emotional distress. Defendant Hadlock counters that Hadlock brought claims for defamation and false light, and "one line in her

---

[4] In her MHPA brief, filed after this Court's September 29, 2023 Order requiring Defendant Hadlock to submit her medical records for in camera review, Defendant Hadlock points to a Third Circuit case holding that the district court exceeded its authority in compelling the hospital to produce the charts of two involuntarily committed male psychiatric patients for in camera review because it violated the MHPA. Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 465 (3d Cir. 1996). For the reasons outlined in this Memorandum, and unlike the Hahnemann Court which was presented with facts clearly showing that the medical records belonged to "involuntarily committed" patients, this Court reviewed the records for the limited purpose of ascertaining whether the MHPA affords privilege protection over Defendant Hadlock's medical records in the first instance since Defendant Hadlock did not provide sufficient facts in her briefings to indicate that she was (1) an involuntary patient or (2) received inpatient treatment. Defendant Hadlock raised no opposition to this Court's Order requiring in camera review and produced the documents for in camera review on the date ordered.

complaint mentioning shame and distress is demonstrably insufficient to constitute an implicit waiver of her privilege under the MHPA." ECF No. 58 at 9.

This Court agrees with Defendant Hadlock that the one line in question—where Defendant Hadlock alleges that Defendants' publication "has caused Plaintiff [Hadlock] … mental suffering, shame, humiliation, physical and emotional distress"– is insufficient to waive completely the privilege protections afforded by the MPHA and warrant disclosure of all her past medical records to Defendant Skinner. The subpoenas at-issue were general and very broad, seeking "[a]ny and all medical records related to treatment rendered to Anna Hadlock," with no limitation in terms of temporal scope. Plaintiff Skinner has not provided evidence sufficient to show that the information contained in Defendant Hadlock's medical records—all of which are dated more than five years before Plaintiff Skinner and Defendant Hadlock met and this cause of action arose—is relevant, not discoverable by other means, and warrants disclosure.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Hadlock's Motion to Quash is granted. An appropriate order follows.

O:\Rachel.2023\Skinner v. Hadlock 22-3087\22-3087 Skinner v. Hadlock Motion to Quash 2.docx